IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, KAREN J. HOBBS, | ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 3:06-1169 JUDGE HAYNES |
| v. | ) ) ) | |
| MEDQUEST ASSOCIATES, INC., BIOIMAGING AT CHARLOTTE, INC., BIOIMAGING OF COOL SPRINGS, INC., BIOIMAGING OF HARDING, INC., now known as BIOIMAGING OF EDMONDSON, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM**

Relator Karen J. Hobbs, filed this action under the False Claims Act, ("FCA"), 31 U.S.C. § 3701 et seq., against the Defendants for their violation of Medicare requirements for independent diagnostic testing facilities ("IDTFs"), including submissions of false claims. The United States joined this action. In earlier proceedings, the Court granted the Relator's and Government's motions for summary judgment on most of their FCA claims and awarded judgment in the amount of $11,110,662.71.

Before the Court is the Relator's motion for attorney fees under 31 U.S.C. § 3730(d) (Docket Entry No. 237). In her motion, the Relator seeks compensation in the amount of $499,250 for: (1) her counsel's precomplaint investigation of Defendants' conduct, including detailed disclosures of evidence and legal analysis to the United States; (2) her counsel's interviews of witnesses and investigators about Defendants' conduct; (3) her counsel's review of

1

witness transcripts and drafting of witness declarations; (4) drafting discovery and other documents; (5) research and drafting of legal motions and responses to Defendants' motions; (6) analysis of data and discovery documents; (7) assistance to the United States in reviewing such claims and discovery documents, including identifying deficiencies in the Defendants' discovery productions; (8) telephone conferences with counsel for the United States on claims and strategies; and (9) attendance at hearings and depositions throughout this litigation.

In their response (Docket Entry No. 240), the Defendants object on several grounds: (1) that Relator's request is untimely; (2) that Relator's requests for compensation for legal services on her Tennessee law claim should be denied because the Relator voluntarily dismissed those claims and the United States did not pursue any state law claims; (3) that Relator's counsel's research and communications with the Tennessee Attorney General was impermissible; (4) that Plaintiff's discovery was duplicative of the United States's discovery requests;and (5) that Plaintiff's fee application violates the "3%" rule under Sixth Circuit precedent.

In her reply (Docket Entry No. 248), the Relator asserts, in sum: (1) that because the Court's Order did not set a deadline and the exclusion of Saturdays and Sundays under Fed. R. Civ. P. 6, Relator's fee request was filed timely; (2) that the State False Claims Act claims were based upon the same facts, witnesses and fraudulent conduct as the Federal FCA claims; and (3) that time expended in jointly pursuing and prosecuting this action with the United States is reasonable and is not duplicative. In addition, Relator, agrees to a reduction of her attorney fees request to the 3% of total fees, as required by <u>Gonter v. Hunt Valve Co., Inc.</u>, 510 F.3d 610 (6th Cir. 2007). Realtor reduces her fee request to eliminate $6,175.00 in fees identified as clerical errors or duplicative billing. Thus, Relator seeks a modified award of $478,247.50.

Under the FCA, successful Relators are entitled to "reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs" against defendants. 31 U.S.C. § 3730(d)(1); See Cooke County, Ill. v. United States, ex rel., Chandler, 538 U.S. 119, 123 (2003). Congress recognized the importance of awarding fees to qui tam plaintiffs, stating:

> "[Section] 3730 [of the FCA] provides that prevailing qui tam relators may be awarded reasonable attorneys fees in addition to other percentage of award recovered.... Unavailability of attorneys fees inhibits and precludes many private individuals, as well as their attorneys, from bringing civil fraud suits.

S. Report 99-345, at 29. (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5294. This statutory authorization reflects the "twin goals of ensuring adequate compensation for counsel who take on FCA cases and preventing a windfall for lawyers." See Gonter, 510 F.3d at 617.

"'[C]ounsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee paying client, **for all time reasonably expended on a matter.**'" City of Riverside v. Rivera, 477 U.S. 561, 575 (1986) (internal quotation marks omitted and emphasis in original). In a word, an award of attorneys' fees under the FCA must be "reasonable." Gonter, 510 F.3d at 616 (quoting Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999)). In awarding fees, Courts employ the "lodestar" method that multiplies a reasonable hourly rate by a reasonable number to hours expended, see Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986), but excludes "unreasonable and excessive hours or when unique circumstances justify adjustments to hourly rates." United States ex rel. Taxpayers Against Fraud v. General Electric Co., 41 F.3d 1032, 1048 (6th Cir. 1994). The lodestar method considers an attorney's experience and special knowledge. See Pierce v. Underwood, 487 U.S.

3

552, 581 (1988).

The Relator bears the initial burden "of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "[T]he party opposing the fee award then has the burden to challenge ... the reasonableness of the requested fee." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d. Cir. 1990).

As to hourly rates, a reasonable rate is based upon the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). A district court may consider the "national market" for specialization areas of law, if appropriate. Louisville Black Police Officers Org. v City of Louisville, 700 F.2d 268, 278 (6th Cir. 1983). "A national market or a market for particular legal specialization may provide the appropriate market." Berry v. School Dist. of City of Benton Harbor, 703 F.Supp. 1277, 1283 (W.D. Mich. 1986).

Realtor's counsel, Marlan B. Wilbanks and Ty M. Bridges, are experienced FCA litigators who have represented qui tam plaintiffs for over a decade, and successfully prevailed in FCA cases. (Docket Entry No.238-1, Wilbanks declaration at ¶¶ 5, 13-14). Wilbanks and Bridges are AV-rated lawyers and have practiced for approximately 25 and 39 years, respectively. Id. at ¶¶ 6, 13, 17. Given that Defendants operate a multistate business and the Relator's counsel's FCA litigation experience, the Court deems national hourly rates appropriate. Wilbanks seeks an hourly rate of $550.00 and Bridges charges an hourly rate of $475.00. Other qui tam counsel support Realtor's hourly rates for her counsel. See Docket Entry Nos 238-1 through 238-4. Given these counsel's experiences and the complexity of this industry and the FCA, the Court

4

accepts the proof for these hourly rates, but deems the fee amount requested to warrant closer scrutiny of the hours expended.

As to the number of hours expended, Relator's counsel seek 999 hours for investigation, litigation and assistance over almost five years. Yet, the hours spent includes time expended on Plaintiff's retaliation claim that the Court dismissed. Those time requests will be denied. Relator's counsel's "summary of time" has numerous entries for researching Tennessee law, including "Tenncare Medicaid rules," "Tenncare supervision standards," "Tenncare CPT code compliance," "Medicare IDTF supervision issues," and certificate of need issues, among others; discussions and meetings with the Kentucky Assistant Attorney General ("Kentucky AG"); discussion with the "Memphis Department of Justice;" and analysis and preparation of a memorandum addressing Tennessee law, including Tenncare. (Docket Entry No. 238-5 at 1). The Court agrees that the fees associated with Tennessee law claims and communications with Tennessee and Kentucky officials are beyond the FCA and Relator voluntarily withdrew her state claims. Relator's counsel's communications and meetings with the Tennessee Attorney General should likewise be excluded. The State of Tennessee was a named plaintiff, but declined to intervene. The United States did not assert any state law claims. Thus, the following time entries shall be excluded from any award:

| Date | Timekeeper | Amount |
|---|---|---|
| 11/14/2006 | MBW | $1,265.00 |
| 12/11/2006 | MBW | $1,980.00 |
| 12/18/2006 | TMB | $1,900.00 |
| 1/11/2007 | TMB | $1,235.00 |

| | | |
|---|---|---|
| 1/12/2007 | TMB | $1,615.00 |
| 1/19/2007 | TMB | $1,900.00 |
| 1/22/2007 | TMB | $2,375.00 |
| 1/23/2007 | TMB | $1,900.00 |
| 1/24/2007 | TMB | $1,852.50 |
| 1/25/2007 | TMB | $1,567.50 |
| 2/5/2007 | MBW | $2,255.00 |
| 2/7/2007 | MBW | $1,760.00 |
| 2/13/2007 | TMB | $1,900.00 |
| 2/16/2007 | TMB | $1,187.50 |
| 2/19/2007 | TMB | $1,900.00 |
| 2/20/2007 | TMB | $902.50 |
| 3/19/2007 | MBW | $1,320.00 |
| 4/2/2007 | TMB | $1,425.00 |
| 4/11/2007 | TMB | $2,375.00 |
| 4/11/2007 | MBW | $2,805.00 |
| 4/13/2007 | TMB | $950.00 |
| 4/13/2007 | MBW | $1,320.00 |
| 4/18/2007 | TMB | $1,805.00 |
| 4/23/2007 | MBW | $935.00 |
| 4/24/2007 | TMB | $1,662.50 |
| 5/1/2007 | MBW | $1,265.00 |
| 5/3/2007 | MBW | $1,210.00 |
| 5/8/2007 | TMB | $950.00 |
| 5/8/2007 | MBW | $1,100.00 |
| 5/18/2007 | MBW | $1,320.00 |

| Date | Code | Amount |
|---|---|---|
| 6/29/2007 | MBW | $1,155.00 |
| 7/25/2007 | MBW | $1,320.00 |
| 8/7/2007 | MBW | $1,100.00 |
| 9/18/2007 | MBW | $770.00 |
| 10/11/2007 | MBW | $1,760.00 |
| 10/15/2007 | MBW | $1,155.00 |
| 10/25/2007 | MBW | $935.00 |
| 10/26/2007 | TMB | $2,185.00 |
| 10/29/2007 | MBW | $495.00 |
| 11/7/2007 | MBW | $880.00 |
| 11/8/2007 | TMB | $3,800.00 |
| 11/15/2007 | MBW | $935.00 |
| 11/19/2007 | TMB | $2,185.00 |
| 1/2/2008 | MBW | $880.00 |
| 1/16/2008 | MBW | $880.00 |
| 1/28/2008 | MBW | $770.00 |
| 3/6/2008 | MBW | $1,650.00 |
| 3/13/2008 | MBW | $1,045.00 |
| 4/16/2008 | MBW | $1,100.00 |
| 5/22/2008 | MBW | $1,045.00 |
| 9/4/2008 | MBW | $1,155.00 |
| 9/29/2008 | MBW | $825.00 |
| 11/5/2008 | MBW | $1,760.00 |
| 1/7/2009 | TMB | $1,472.50 |
| 1/13/2009 | TMB | $332.50 |
| 1/13/2009 | MBW | $880.00 |

| 2/3/2009 | MBW | $990.00 |
| 2/11/2009 | MBW | $880.00 |
| 3/2/2009 | MBW | $1,320.00 |
| 3/31/2009 | MBW | $880.00 |
| 4/3/2009 | MBW | $660.00 |
| 6/19/2009 | TMB | $1,947.50 |
| 7/17/2009 | TMB | $1,662.50 |
| 10/19/2010 | TMB | $1,757.50 |
| | | **$90,505.00** |

(Docket Entry No. 240 at 4-6; Docket Entry No. 238-5 at 1-13). This conclusion reduces the Relator's fee request by ninety thousand five hundred five dollars ($90,505.00).

As to whether Relator's counsel's work is duplicative of the United States, Defendants identify the following entries after the United States intervened on March 31, 2009 (Docket Entry No. 20), as duplicative of the United States's efforts.

| **Date** | **Timekeeper** | **Amount** |
|---|---|---|
| 4/10/2009 | MBW | $1,100.00 |
| 4/30/2009 | MBW | $1,100.00 |
| 5/5/2009 | MBW | $1,705.00 |
| 5/5/2009 | TMB | $1,140.00 |
| 5/7/2009 | MBW | $1,870.00 |
| 5/12/2009 | MBW | $1,485.00 |
| 5/14/2009 | TMB | $1,757.50 |
| 5/21/2009 | MBW | $825.00 |
| 5/22/2009 | MBW | $385.00 |
| 6/2/2009 | MBW | $770.00 |

| | | |
|---|---|---|
| 6/3/2009 | TMB | $2,185.00 |
| 6/4/2009 | TMB | $950.00 |
| 6/18/2009 | MBW | $1,320.00 |
| 6/30/2009 | TMB | $2,280.00 |
| 7/1/2009 | TMB | $2,280.00 |
| 7/1/2009 | TMB | $950.00 |
| 7/2/2009 | MBW | $825.00 |
| 7/2/2009 | TMB | $665.00 |
| 7/8/2009 | TMB | $1,045.00 |
| 7/9/2009 | MBW | $1,155.00 |
| 7/13/2009 | TMB | $2,707.50 |
| 7/14/2009 | TMB | $617.50 |
| 7/15/2009 | TMB | $2,042.50 |
| 8/3/2009 | MBW | $1,705.00 |
| 8/4/2009 | TMB | $1,615.00 |
| 8/11/2009 | MBW | $550.00 |
| 1/12/2010 | MBW | $770.00 |
| 1/27/2010 | MBW | $385.00 |
| 3/1/2010 | TMB | $1,425.00 |
| 3/8/2010 | TMB | $1,187.00 |
| 3/09/2010 | TMB | $332.50 |
| 3/23/2010 | MBW | $660.00 |
| 3/25/2010 | TMB | $950.00 |
| 4/13/2010 | TMB | $380.00 |
| 4/15/2010 | MBW | $550.00 |
| 5/12/2010 | TMB | $1,900.00 |

| | | |
|---|---|---|
| 6/2/2010 | TMB | $997.50 |
| 6/16/2010 | TMB | $1,235.00 |
| 8/31/2010 | MBW | $1,100.00 |
| 10/20/2010 | TMB | $1,615.00 |
| 10/21/2010 | TMB | $665.00 |
| 11/17/2010 | TMB | $950.00 |
| 11/23/2010 | TMB | $855.00 |
| 11/30/2010 | TMB | $617.50 |
| 1/18/2011 | TMB | $332.50 |
| 1/27/2011 | MBW | $330.00 |
| 1/28/2011 | TMB | $760.00 |
| 2/2/2011 | TMB | $617.50 |
| 2/4/2011 | MBW | $605.00 |
| 2/24/2011 | TMB | $950.00 |
| 2/25/2011 | TMB | $1,092.50 |
| 2/27/2011 | MBW | $495.00 |
| 3/4/2011 | TMB | $1,900.00 |
| 3/7/2011 | TMB | $1,947.50* |
| 3/14/2011 | TMB | $1,662.50* |
| 4/13/2011 | TMB | $1,092.50 |
| 4/14/2011 | TMB | $190.00 |
| 4/21/2011 | TMB | $1,425.00 |
| 4/25/2011 | MBW | $715.00 |
| 9/14/2011 | TMB | $617.50 |
| 9/28/2011 | MBW | $935.00 |
| | | **$67,272.00** |

(Docket Entry No. 240 at 8-10; Docket Entry No. 238-5 at 7-16)[1].

The Court deems it difficult to evaluate this duplication issue on the parties' submissions. From a review of the docket, the United States submitted 71 filings whereas the Relator submitted 22. The United States filed twenty motions to Relator's seven. Of responses, the United States filed thirteen, the Relator filed six. To be sure, there were 100 depositions filed with 344 exhibits. In the Court's view, these filings reflect that the lion's share of the work was by the United States.

Thus, with the agreed reduction for clerical duplication, the reduction to the 3% limit under Gonter, and the Court's reductions, the Court deems reasonable attorneys' fee for Relator to be $327,645.50 in attorney fees and expenses.

An appropriate Order is filed herewith.

**ENTERED** this the _16th_ day of August, 2012.

William J. Haynes, Jr
United States District Judge

---

[1] The entries denoted by the asterisk reflect entries where the hours billed were "written up" from the hours actually worked.